# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

JULIE FULLMER                                )
                                             )        3:08-cv-00040-LRH (VPC)
            Plaintiff,                       )
                                             )
    vs.                                      )        **REPORT AND RECOMMENDATION**
                                             )        **OF U.S. MAGISTRATE JUDGE**
                                             )
MICHAEL J. ASTRUE,                           )
Commissioner,                                )
Social Security Administration,              )
                                             )        January 15, 2009
            Defendants.                      )
_____)

This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's motion to remand the decision of the Administrative Law Judge (#14). Defendant opposed and filed a cross-motion to affirm (#15), and plaintiff replied (#16). For the reasons set forth below, the court recommends that plaintiff's motion to remand (#14) be denied and defendant's cross-motion to affirm (#15) be granted.

## I. ADMINISTRATIVE PROCEEDINGS

On November 5, 2004, plaintiff Julie Fullmer ("plaintiff") filed an application for Social Security disability insurance benefits under Title II of the Social Security Act and for Supplemental Security Income under Title XVI of the Act (AR 54-72). Plaintiff alleged disability based on right shoulder pain, hip pain, lumbar pain, bipolar disorder, ADHD, and ADD (AR 54). Plaintiff's claim was denied initially (AR 411-414) and on reconsideration (AR 416-418). On February 20, 2007, a hearing was held before Administrative Law Judge ("ALJ") James M. Mitchell, where plaintiff was represented by a non-attorney representative (AR 14-25 (opinion);

AR 419-465 (transcript)).  The ALJ filed a written opinion on July 27, 2007, in which he upheld the denial of plaintiff's claim.  Plaintiff requested administrative review on August 29, 2007 (AR 21-22), and the Appeals Council denied review on November 23, 2007, making the ALJ's decision final (AR 5-8).  Having exhausted all administrative remedies, plaintiff filed a complaint for judicial review on January 23, 2008 (#2).

## II. BACKGROUND

Plaintiff was born on July 1, 1958, and was forty-eight years old at the time of her hearing (AR 422).  Plaintiff did not complete high school, but has a GED (AR 422).  Plaintiff's last employment was in 2004 as a janitor (AR 61, 425).  Plaintiff's other past employment includes work as a cashier, stock clerk, picker/puller, change person, cab driver, meat packager, gas station attendant, warehouse worker, and home attendant (AR 61-63, 426-432, 459).  Plaintiff alleges that she became disabled on September 14, 2004, due to a rotator-cuff tear in her right shoulder, which caused her the inability to lift or use her right arm; pain in her hips and lower back; and bipolar disorder, ADD, and ADHD (AR 58-61).

The ALJ found the plaintiff not disabled because he found plaintiff capable of performing her past relevant work, or in the alternative, the ability to perform other jobs that exist in significant numbers in the national economy (AR 23).  Specifically, the ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2009.
>
> 2. The claimant has not engaged in substantial gainful activity since September 14, 2004, the alleged onset date (20 CFR 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: status post right shoulder rotator cuff tear and repair and osteoarthritis of the hips (20 CFR 404.1520(c) and 416.920(c)).

2

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the following residual functional capacity: the ability to lift, push, and pull 20 pounds occasionally and 10 pounds frequently; the ability to walk/stand frequently; the ability to sit, stoop, and bend occasionally; the moderately limited ability to reach overhead; the slightly limited ability to maintain attention and concentration; the slightly limited ability for understanding and memory; and the slightly limited ability to do simple, routine, repetitive tasks. The claimant has slight to moderate pain and requires occasional supervision.

6.      The claimant is able to perform past relevant work (20 CFR 404.1565 and 416.965).

7.      The claimant was born on July 1, 1958 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.      The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR 404 Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), and 416.966).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from September 14, 2004, through the date of this decision (20 CFR

1                  404.1520(g) and 416.920(g)).

2  (AR 19-24).

3                    **III.  STANDARD OF REVIEW**

4        The court must uphold the decision of an administrative law judge if the ALJ properly

5  applied the correct legal standards and his findings of fact are supported by substantial evidence

6  in the record.  *See Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); 42 U.S.C. § 405(g).

7  "Substantial evidence" has been defined as "relevant evidence which a reasonable person might

8  accept as adequate to support a conclusion."  *Matthews v. Shalala,* 10 F.3d 678, 679 (9th Cir.

9  1993); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence is more

10  than a mere scintilla but less than a preponderance.  *See Jamerson v. Chater*, 112 F.3d 1064, 1066

11  (9th Cir. 1997), *citing Smolen*, 80 F.3d at 1279.  "To determine whether substantial evidence

12  exists [the court must] look at the record as a whole, considering both evidence that supports and

13  undermines the ALJ's findings.  However, if the evidence is susceptible of more than one rational

14  interpretation, the decision of the ALJ must be upheld."  *Orteza v. Shalala*, 50 F.3d 748, 749 (9th

15  Cir. 1995) (citations omitted).  The ALJ alone is responsible for determining credibility, and for

16  resolving ambiguities.  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).

17        The Social Security Administration ("SSA") defines disability as the "inability to engage

18  in any substantial gainful activity by reason of any medically determinable physical or mental

19  impairment which ... has lasted or can be expected to last for a continuous period of not less than

20  12 months."  42 U.S.C. § 423(d)(1)(A).  A claimant is considered disabled "only if his physical

21  or mental impairment or impairments are of such severity that he is not only unable to do his

22  previous work but cannot ... engage in any other kind of substantial gainful work which exists in

23  the national economy ...."  42 U.S.C. § 423(d)(2)(A).

24        Pursuant to the SSA, the Secretary has adopted regulations which establish a formalized,

4

1
2
five-step sequential evaluation process to determine whether a claimant is disabled.  *See* 20
3
C.F.R. § 404.1520.  The Administrative Law Judge considers: (1) whether the person is engaging
4
in substantial gainful activity; (2) severity of the alleged impairment; (3) whether the impairment
5
meets or equals a listed impairment and meets the duration requirement; (4) whether the
6
individual is capable of doing work he or she has done in the past; and (5) whether the
7
impairment prevents the person from doing any other work.  *Id.*  If at any point in the five-step
8
9
inquiry it is determined that a claimant is or is not disabled, further review is unnecessary.

10
## IV.  ANALYSIS

11
Plaintiff argues that the ALJ made numerous errors of law, and that the ALJ's conclusions
12
were not supported by substantial evidence (#14, p. 3).  Specifically, plaintiff asserts that the ALJ
13
made the following errors: "(1) The ALJ's conclusion that plaintiff did not meet the 'severe'
14
requirement at Step 2 for her mental condition was error, and was not supported by substantial
15
evidence;  (2) The ALJ did not consider the Plaintiff's back as an impairment, contrary to the
16
evidence and record in this case; (3) The ALJ did not consider the Plaintiff's left shoulder as an
17
impairment, contrary to the evidence and record in the case; (4) The ALJ improperly rejected the
18
19
opinions of several treating physicians; (5) The ALJ improperly discredited Plaintiff's testimony;
20
[and] (6) The ALJ opinion was generally confusing and the record created was not thorough." *Id.*
21
p. 3-4. Defendant's position is that the ALJ properly considered plaintiff's mental impairment and
22
23
gave appropriate weight to the opinions of plaintiff's treating physicians, the ALJ properly
24
considered plaintiff's physical impairments, the ALJ properly discounted plaintiff's credibility,
25
26
and the "ALJ fully developed the administrative record and issued a clear and comprehensible
27
28

decision" (#15, p. 3-9).[1]

### A.    Plaintiff's Mental Condition and the Opinions of Plaintiff's Physicians

Plaintiff argues that the ALJ erred in not finding her mental condition "severe." Plaintiff asserts that based on medical opinions, and her reported complaints, plaintiff's mental condition more than meets the threshold, *de minimis* definition of severe (#14, p. 7-11). Defendant counters that the ALJ presented substantial evidence to support his finding that plaintiff's mental condition was not severe, and that the ALJ reasonably rejected certain physicians' opinions, and reasonably discounted plaintiff's credibility (#15, p. 3-7). Further, even if the ALJ erred in concluding that plaintiff's mental condition was not severe, any error was harmless, as the ALJ continued the five-step evaluation, finding that plaintiff's mental condition causes her slight limitations in numerous areas, but that she could nonetheless perform her past relevant work. *Id.* p. 3. In reply, plaintiff claims that the ALJ's error was "significantly harmful," which warrants a remand. Plaintiff contends that the issue was not whether plaintiff was disabled, but whether plaintiff "suffered from a severe mental illness," and that the ALJ erred by employing a stricter standard in step two than is mandated by the regulations (#16, p. 3-7). Plaintiff reiterates that she is  not

---

[1]Defendant also points out that "plaintiff failed to provide the summaries required by paragraphs 5(b) and 5(c) in the Court's Order Concerning Review of Social Security Cases" (#15, p. 2). Although plaintiff includes these summaries in her reply, the court notes plaintiff's failure and advises plaintiff's counsel to complete a thorough review of all orders and requirements prior to filing future pleadings. Defendant also objects to the admission of the exhibit submitted with plaintiff's motion, a document containing explanations of the Global Assessment of Functioning (GAF) Scale (#15, p. 2, #14, exh. 1). However, defendant cites to the Diagnostic and Statistical Manual of Mental Disorders, which contains similar information to that contained in plaintiff's exhibit (#15, p. 4). Given that the information contained in the exhibit appears to be readily available and universal, and similar to a source that defendant cites, the court will allow the exhibit. However, the court agrees with defendant that "even quite low GAF scores do not mandate disability," *Id.* p. 4, n. 3, and does not give controlling weight to the definitions contained in the exhibit given the variation in the GAF scores assigned to plaintiff.

requesting the court find her disabled, but only requesting a remand for the ALJ to consider the findings of plaintiff's treating physicians (#16, p. 6).

The ALJ determined that plaintiff suffered from severe physical impairments, but that plaintiff's mental impairments were not severe (AR 19). The ALJ found that although plaintiff suffered from ADHD, bipolar disorder, and post-traumatic stress disorder (PTSD), plaintiff's condition was not severe and did not preclude her from working. The ALJ noted that despite her ADHD, plaintiff was able to work, "as evidenced by her work history record" (AR 20). In making the non-severity determination, the ALJ reviewed numerous physician reports. The ALJ accorded substantial weight to three medical opinions because he found they were supported by the weight of the evidence, including plaintiff's daily activities (AR 20). First, the ALJ reviewed a mental status examination performed by Sheri Skidmore, Ph.D., on January 16, 2006 (AR 189-194). The ALJ focused on several findings from Dr. Skidmore's report. Dr. Skidmore assigned plaintiff a global assessment functioning (GAF) score of 65, which suggests only mild mental limitations. Additionally, Dr. Skidmore found that plaintiff could get along with supervisors, coworkers, and the public, and that she could concentrate for uncomplicated, detailed tasks, and simple one or two step tasks (AR 20, 192). The ALJ also accorded substantial weight to the reports of two DDS doctors, Dr. Mark Richman, Ph.D., and Dr. Sally Skewis, Ph.D., who concluded that plaintiff did not have severe mental impairments (AR 20, 127-140, 204-217). Specifically, on December 27, 2004, Dr. Richman found that plaintiff did suffer from a severe impairment, but that the impairment was not expected to last twelve months (AR 127). In his consultant's notes, Dr. Richman stated that plaintiff was moderately limited by her mental condition, but that her condition should be improve to non-severe by September 2005 (AR 139). In January 2006, Dr. Skewis found that plaintiff did not suffer from a severe mental impairment (AR 204), and that

plaintiff's mental impairments caused no restrictions to her activities of daily living or to her ability to maintain social functioning, and caused only mild limitations to her ability to maintain concentration, persistence, or pace (AR 214).

The ALJ gave little weight to the opinions of three other physicians, because he found their assessments were not supported by plaintiff's daily activities and the weight of opinions in the record (AR 20). First, on March 4, 2004, Dr. Mark Armerding performed a psychiatric evaluation of plaintiff. Dr. Armerding accorded plaintiff a GAF score of 55, which suggests moderate mental limitations (AR 20, 125). The ALJ accorded little weight to Dr. Armerding's assessment because it was inconsistent with Drs. Skidmore's, Richman's, and Skewis's assesments and because it was not supported by plaintiff's record of daily activities (AR 20). Second, on January 31, 2005, plaintiff's treating psychiatrist, Dr. Regina Bahten, diagnosed plaintiff with major depression and PTSD, and indicated that plaintiff would not be able to attend training or perform work until January 2006 (AR 20, 165). The ALJ accorded little evidence to Dr. Bahten's assessment because it was not supported by the treatment records, the doctor's progress notes, other assessments, and plaintiff's daily activities (AR 20). The ALJ noted that Dr. Bahten's progress notes indicate a range of GAF scores from 50-65, and that plaintiff responded well to medication. *Id. citing* AR 170, 172, 31.[2] Third, on January 19, 2006, Dr. Saide Altinsan, plaintiff's treating physician, noted that plaintiff would not be able to sustain simple work, and on December 15, 2005, he found she had a GAF of 50 (AR 20, 196, 201). The ALJ accorded little weight to this opinion because he found it inconsistent with plaintiff's daily activities and the weight of the opinions in the record. However, the ALJ noted that this doctor also  wrote that

_____

[2]The ALJ also cites Exhibit 5F, p. 12 to indicate that plaintiff had a GAF of 60. However, this page is missing from the Administrative Record. *See* AR 167-168.

plaintiff "would be expected to improve within six months with psychotherapy and medication management" (AR 20). The ALJ also noted that although Dr. Altinsan was a "treating" physician, he saw plaintiff on only two occasions. *Id*.

### 1. Non-Severe Impairment

In the second step of the five-step sequential evaluation process, the ALJ is to consider the "medical severity" of a claimant's impairments. The regulation states: "If you do not have a severe medially determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled." 20 C.F.R. § 404.1520(a)(4)(ii). To meet the duration requirement, a claimant's disability must have lasted or must be expected to last twelve months. 20 C.F.R. § 404.1509. "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). The regulation defines basic work activities as "the abilities and aptitudes necessary to do most jobs," and lists several examples: "(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting." *Id*.

The Ninth Circuit has "defined the step-two inquiry as a de minimis screening device to dispose of groundless claims." *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001), *citing Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). At this step, the ALJ must "consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." *Smolen*, 80 F.3d at 1290. The ALJ is also required

to consider "the claimant's subjective symptoms, such as pain and fatigue, in determining severity." At the step-two inquiry, the ALJ can find a claimant's impairment or combination of impairments not severe "only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Id. quoting* SSR 85-28. The Social Security Regulations also note that "great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather, it should be continued." SSR 85-28 *4.

Plaintiff contends that the ALJ erred in failing to find plaintiff's mental impairments severe at step two of the five-step evaluation, and that the ALJ conducted an improper analysis and used the step three standard to determine that plaintiff's mental condition was not severe at step two. Plaintiff asserts that the ALJ improperly rejected at step two numerous medical opinions that found plaintiff disabled and suffering from a severe mental condition, namely Dr. Armerding's, Dr. Bahten's, and Dr. Altinsan's reports. By rejecting these reports, and thus finding plaintiff's mental impairment to be not severe, plaintiff argues that the ALJ improperly failed to consider plaintiff's mental limitations at steps three, four, and five.[3]

At step two, an ALJ is required to examine whether a claimant can perform basic work activities such as the six examples listed in 20 C.F.R. § 1521(a). Even using the step two

---

[3]Plaintiff also argues that the ALJ committed error by not commenting on an additional medical report where plaintiff was given a GAF of 50 (#14, p. 11, *citing* AR 201). However, the ALJ did discuss this report, which was written by Dr. Altinsan, and decided to accord it little weight (AR 20 "A month before, this doctor had assigned the claimant a GAF of 50 (Exhibit 7F/7).") Therefore, the court finds no error.

standard, there is substantial evidence in the record to support the ALJ's findings that plaintiff's mental condition is not severe. Although plaintiff may have some limitation, there is substantial evidence in the record  that she has some ability to walk, stand, sit, push, pull, reach, carry, and handle, that she has the capacity to see, hear, and speak, that she can understand, carry out, and remember simple instructions, that she can use judgment, that she can respond appropriately to supervision, co-workers and usual work situations, and that she can deal with change in a routine work setting. 20 C.F.R. § 1521(a). The ALJ considered plaintiff's limitations in his findings, and there is substantial evidence to support his step two determination.

However, even assuming the ALJ erred, any error was harmless. Plaintiff is correct that the ALJ appears to base his non-severity finding, at least partially, on two DDS reports that use the step three standard. Dr. Richman's and Dr. Skewis's reports use the SSA's "Psychiatric Review Technique" form (AR127-140, 204-217). This form asks examiners to determine if claimants have a medically severe impairment based upon the categories listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Although Dr. Richman filed his report on December 27, 2004, he indicated that his assessment of plaintiff was from September 2004 to September 2005. Dr. Richman found that plaintiff's mental impairments were severe, but not expected to last twelve months, which is the required duration in both steps two and three. He found that plaintiff suffered from an affective disorder under category 12.04 and an anxiety related disorder under category 12.06 (AR 127). Specifically, Dr. Richman found that plaintiff suffered from bipolar disorder type II and PTSD (AR 130, 132). In rating plaintiff's functional limitations, Dr. Richman determined that, by September 2005, plaintiff would suffer from only mild limitations in performing daily activities, maintaining social functioning, and maintaining concentration, persistence, and pace (AR 137).  In his consultant's notes, he stated that plaintiff was moderately

1

2   limited by her mental impairments at the time the examination was conducted, in December 2004,

3   but that plaintiff's condition "should be improved to non severe" by September 2005 (AR 139).[4]

4        Dr. Skewis conducted her examination in January 2006, analyzing plaintiff's condition

5   for the period between September 14, 2004, and January 23, 2006, and also found that plaintiff

6   suffered from an affective disorder under category 12.04 and an anxiety related disorder under

7   category 12.06, but that plaintiff's impairments were not severe (AR 204). Dr. Skewis determined

8   that plaintiff had major depressive disorder and that she suffered from sleep disturbance and had

9   difficulty concentrating or thinking (AR 207). Dr. Skewis also found that plaintiff suffered from

10  PTSD (AR 209). In rating plaintiff's functional limitations, Dr. Skewis determined that plaintiff

11  suffered from only mild limitations in maintaining concentration, persistence, and pace, and no

12  limitations in activities of daily living or maintaining social functioning (AR 214). In her

13  consultant's notes, Dr. Skewis noted that plaintiff was able to learn, understand, remember, and

14  complete detailed tasks (based on an a completed psychiatric review technique form and

15

16  plaintiff's ability to process eight digits forward, four backward, accurately subtract serial threes

17  and recall three of three items after fifteen minutes), and that she had adequate social and adaptive

18  skills (AR 216).

19

20       The questions that these two examiners  answered in the psychiatric review technique

21

22  _____

23       [4]Plaintiff argues that Dr. Richman's report had an internal inconsistency because it states that
24  plaintiff has mild restriction of daily activities, maintaining social functioning and maintaining
     concentration, persistence, and pace, but that it also states that plaintiff's daily activities are
25  "moderately" limited by her mental condition. However, plaintiff has misunderstood and misstated
     the examiner's findings. Dr. Richman found that although plaintiff was moderately limited at the
26  time he conducted the exam, she would only be mildly limited by her mental condition by the
     following September. Because plaintiff would not be moderately limited for a twelve month period,
27  she did not meet the duration requirement mandated by the Social Security Regulations. This is an
     explanation, not an inconsistency.
28

form are those asked in step three of the five-step analysis. Step three states that if a claimant has an impairment that equals one of the listings in appendix 1, and meets the duration requirement of one year, the SSA will automatically find the claimant disabled. Therefore, the examiner's determination that plaintiff's impairments are not severe are in response to the severity determination at step three, not step two.

Plaintiff is also correct that the severity determination at step two is a *de minimis*, threshold requirement, and that if the ALJ is "unable to determine clearly the effect of an impairment or combination of impairments on [plaintiff's] ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step." SSR 85-28 *4. However, even though the ALJ found plaintiff's mental condition not to be severe, he did not end his evaluation at step two. Therefore, any error in his analysis was harmless error. *See Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1054-55 (9th Cir. 2005) (holding that an ALJ's error is harmless if it was inconsequential to the ultimate nondisability determination). The ALJ also included the limiting effects of plaintiff's mental condition in the hypothetical questions posed to the vocational expert and in his determination of the jobs plaintiff could perform. In some of the hypothetical questions posed to the VE, the ALJ asked the VE to assume that plaintiff is "slightly limited in attention, concentration, understanding, and memory" and that she is "slightly limited in the ability to do simple, routine tasks" (AR 460). The ALJ also found that plaintiff had the "slightly limited ability to maintain attention and concentration; the slightly limited ability for understanding and memory; and the slightly limited ability to do simple, routine, repetitive tasks" (AR 21). Therefore, even if the ALJ committed error in his application of step two, such error was harmless because he accounted for plaintiff's mental limitations in his analysis of steps four and five.

Additionally, the ALJ's reasoning and ultimate determination as to the severity of plaintiff's mental impairments is supported by substantial evidence in the record. *Carmickle v. Commissioner, Social Security Administration*, 533 F.3d 1155, 1162 (9th Cir. 2008). The court is to focus on the "validity of the ALJ's underlying decision, and not necessarily on whether the ALJ would come out differently if the case were remanded after error was identified by the court." *Id.* at 1163. Plaintiff argues that  the ALJ's error was "significantly harmful" because the ALJ only indicated that plaintiff's mental impairments were slight, even though she has "suffered significant mental disabilities for years" (#16, p. 3). As previously stated, plaintiff claims that the ALJ incorrectly applied the step three standard at step two. However, the effect was that the ALJ essentially skipped step two and found plaintiff's mental impairments not severe at step three. The ALJ's underlying decision would have come out exactly the same whether he had gone through a full step two analysis. There is substantial evidence to support the ALJ's underlying decision that plaintiff's mental condition was not severe, as required by 20 C.F.R. 404.1520(c), and any error was harmless, as it was inconsequential to the ultimate nondisability determination.

## 2. Treating and Examining Physicians

Cases within the Ninth Circuit distinguish between the opinions of (1) treating physicians, (2) examining physicians, and (3) non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, the opinions of treating physicians are afforded greater weight than the opinions of other physicians because treating physicians "are employed to cure and thus have a greater opportunity to know and observe the patient as an individual...." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996) (citations omitted).  "A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case

14

record." *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) *citing* SSR 96-2p.

The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted, *Magallenes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989); however, an ALJ may not reject the treating physician's opinion if it is contradicted by other physicians' opinions unless the ALJ "makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Id.*, *quoting Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); *see also Lester,* 81 F.3d at 830. "If the treating physicians' opinions are uncontroverted, those reasons must be clear and convincing." *Smolen*, 80 F.3d at 1285.

The opinion of an examining physician is, in turn, entitled to more weight than that of a non-examining physician. *Lester*, 81 F.3d at 830. The ALJ must provide clear and convincing reasons to reject the uncontradicted opinion of the examining physician, and "specific and legitimate" reasons if the examining physician's opinion is contradicted by that of another doctor. *Id*. at 830-31.

The ALJ properly discounted the opinions of certain physicians, while relying on others. There are numerous medical reports, notes, laboratory and radiology findings in the record. As previously noted, the ALJ relied on three reports and accorded little weight to three reports to make his finding regarding plaintiff's mental impairments (*see* AR 20). The ALJ relied on three reports and accorded little weight to a fourth report in making his finding regarding plaintiff's physical impairments. Plaintiff is primarily concerned with the ALJ's decision to accord little weight to the opinions of the three physicians on plaintiff's mental condition, two of them treating physicians. Plaintiff claims that the ALJ placed too much emphasis and "exaggerated" the meaning of plaintiff's daily activities, and that "these alone do not set forth specific and legitimate reasons to discredit the opinions of these doctors" (#14, p. 13). Plaintiff also contends that the

only reason the ALJ gives for discrediting these physicians' opinions is plaintiff's activities of daily living, but that "this does not make clear to subsequent reviewers the exact reasons the ALJ is discrediting these opinions." *Id*. at p. 14. The court disagrees. As all of the opinions discredited by the ALJ were contradicted, the ALJ needed only give specific and legitimate reasons for rejecting them.

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *citing Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ rejected the opinion of Dr. Mark Armerding because it was inconsistent with the three opinions the ALJ accepted and because it was not supported plaintiff's record of daily activities (AR 20). These reasons are both legitimate and specific. The ALJ decided to give more weight to medical evidence that he found to be substantiated by plaintiff's daily activities, and less weight to this report, written by a doctor who met plaintiff only one time, who did not have the benefit of reviewing her entire medical record, and who conducted his examination before plaintiff's claimed period of disability. The ALJ set out, in detail, the daily activities that he found conflicted with Dr. Armerding's opinion (*see* AR 22). He also based his rejection on the fact that Dr. Armerding's findings conflicted with other physicians' reports. These are legitimate and specific reasons for rejecting this opinion, which are supported by substantial evidence in the record.[5]

---

[5]The court notes that plaintiff greatly emphasizes certain parts of Dr. Armerding's report, yet ignores others. For instance, although Dr. Armerding did find that plaintiff suffered from mental illnesses, he also noted that she was unlikely to qualify for Social Security Disability and that "she does not appear disabled by her mental illness in that she has always been able to go to work despite whatever mood symptoms she might be having" (AR 124-25). Additionally, given the emphasis and weight plaintiff places on this report, the court finds it interesting that plaintiff consistently misspelled the doctor's name (often spelled "Armerdign" in #14 and "Armerdigen"in #16. Plaintiff also repeatedly misspelled the names of other physicians including Dr. Regina Bahten (not

The ALJ also gave specific and legitimate reasons for discounting the opinions of Drs. Bahten and Altinsan. As for Dr. Bahten, although she is plaintiff's treating physician, and her opinion is therefore entitled to some weight, the opinion that the ALJ discounted is contradicted by other physicians' reports and by her own progress notes. The ALJ stated that he was only according little weight to Dr. Bahten's January 31, 2005 assessment that plaintiff could not attend training or perform work of any kind until January 2006, because "it is not supported by the treatment record, other assessments, and the claimant's own daily activities" (AR 20). The ALJ then goes on to explain where he found Dr. Bahten's January 31, 2005 assessment to differ from her treatment notes, and which of plaintiff's daily activities he found to indicate a higher level of functioning than Dr. Bahten's assessment suggested. *Id*. These are specific and legitimate reasons for rejecting Dr. Bahten's January 31, 2005 assessment, which are supported by substantial evidence in the record. As for Dr. Altinsan, the ALJ discounted his opinion that plaintiff could

"Bahter"), Dr. Mark Richman (not "Rickman" or "Riffman"), and Dr. Saide Altinsan (not "Saldealtinasan"). Such carelessness concerns the court, especially considering how critical plaintiff was of the ALJ's organization. Of greater concern to the court, however, is plaintiff's repeated and chronic misstatement of facts from the record. For example, as noted previously, plaintiff asserts that Dr. Richman's report was internally inconsistent, which is incorrect (See footnote 3). Additionally, again, as already stated, plaintiff asserts that the ALJ failed to comment on a report written by Dr. Altinsan, on which the ALJ actually did comment on and reject (see footnote 2). Further, plaintiff claims that in a January 19, 2006 report, Dr. Altinsan diagnosed plaintiff with PTSD, and concluded that she could not engage in even simple work. This is accurate. However, plaintiff also stated that Dr. Altinsan wrote that "he did not know how long it would be before [plaintiff] would be able to return to simple work" (#14, p. 10). This is not what Dr. Altinsan wrote in his report. In fact, he wrote that he did not know how long plaintiff's limitations had existed, but that plaintiff was expected to improve within six months with psychotherapy and medication management (AR 196). Finally, plaintiff stated that the ALJ ignored Dr. Dow's March 27, 2006 report (#16, p. 19, AR 324). However, the ALJ did not have this report when he made his decision. The report was submitted only to the Appeals Council (AR 9), and thus the ALJ cannot be faulted for failing to comment on it. At almost 500 pages, the record in this case is voluminous. The court relies on counsel to accurately recount the facts in the record. Plaintiff's blatant misstating of the record has made the court's review of this case extremely time consuming and frustrating. Plaintiff is admonished to state the facts accurately and to avoid hyperbole.

not perform even "simple work," because "it is inconsistent with the claimant's daily activities and the weight of opinions in the record" (AR 20). These are also specific and legitimate reasons for discrediting the opinion.

### B.      ALJ's Consideration of Plaintiff's Testimony

Plaintiff next argues that the ALJ erred in rejecting her testimony, and contends that the "ALJ's negative credibility finding is not supported by the evidence he cites" (#14, p. 16). Plaintiff also claims that the ALJ "failed to provide specific and detailed reasons for discrediting plaintiff's pain complaints. Daily activities fall short, and the record is full of medical opinions and objective findings that the claimant's pain complaints and limiting effects of these symptoms are in fact credible." *Id*., p. 19. Additionally, plaintiff asserts that her daily activities, which the ALJ finds belied her complaints of pain, "do not consume a substantial part" of plaintiff's day. *Id*., p. 17. Defendant responds that the ALJ properly discounted plaintiff's credibility (#15, p. 8). The ALJ "pointed out multiple reasons for discounting the alleged degree of plaintiff's impairment...[including] the ability to care for her pets, prepare simple meals, grocery shop, clean and take care of her daughter," and that the ALJ's findings are thus entitled to deference. *Id*. p. 8-9. Plaintiff replies that the reasons given by the ALJ for discounted plaintiff's credibility were not clear and convincing, and that the ALJ exaggerated the amount of time plaintiff spends on daily activities. *Id*. p. 8-9. Specifically, plaintiff claims that she has her dog for therapy reasons and someone else cleans up after it, that she can perform her personal care, but has trouble dressing above the waist due to shoulder pain, she prepares meals, but they are usually microwave meals that take only one to five minutes to prepare, and that she spends most of her time inside her house. *Id*., p. 9.

The ALJ is responsible for determining credibility, resolving conflicts in medical

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

testimony and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). If the ALJ rejects the claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). If a claimant produces medical evidence of an impairment, the ALJ may not discredit the claimant's testimony as to the severity of the symptoms merely because they are unsupported by objective medical evidence. *Reddick*, 157 F.3d at 722, *citing Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (*en banc*). "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be 'clear and convincing.'" *Lester*, 81 F.3d at 834. "The fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001), *citing Smolen*, 80 F.3d at 1285. The ALJ must identify what specific evidence undermines the plaintiff's complaints. *Id*. In addition to the objective medical evidence, 20 C.F.R. § 404.1529(c)(3) mandates that the ALJ assess the following when assessing the credibility of a claimant's description of pain: "(i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medications, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g. lying flat on your back, standing for 15-20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms." 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

In his step three analysis, the ALJ found that plaintiff's "medically determinable

impairments could reasonably be expected to produce the alleged symptoms, but that [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible" (AR 22).  The ALJ based this decision on plaintiff's daily activities and four physicians' reports. The ALJ stated: "The claimant has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. In a function report, the claimant noted that she cares for pets, prepares simple meals, goes grocery shopping weekly, and does "light cleaning." In another function report, the claimant noted that she cares for her daughter by keeping in touch with her school and making sure that her daughter goes to doctor's appointments. She also noted that she goes on walks with her friend and is able to pay bills, count change, and use a checkbook. At the hearing, the claimant testified that she washes dishes once to twice daily, does laundry once a week, cleans her yard, reads an hour a day, watches television for 10-12 hours daily, visits with others three to four times a month, leaves her home one to three times a week, and uses public transportation." *Id.* (internal citations omitted).

The ALJ also discussed the opinions of two of plaintiff's physicians and two Disability Determination Service medical consultants. In the first, a report of illness, incapacity, or disability from February 2005, Dr. Bella Galdo, plaintiff's treating physician noted that her impairments included the right shoulder rotator cuff tear, osteoarthritis in her hips, and chronic low back pin. However, the physician concluded that plaintiff could still work with certain limitations, including no heavy lifting, pulling, or pushing, and noted that plaintiff's right shoulder impairment would be permanently debilitating until it was corrected through surgery. *Id.*, *citing* AR 241. The ALJ found the limitations noted by Dr. Galdo were "consistent with a finding of light exertional capacity and [were] supported by the record of the claimant's daily activities and

20

the opinions of two Disability Determination Service ("DDS") medical consultants who found that claimant had the capacity for light exertion." *Id*. at p. 23, *citing* AR 149-156, 253-260.  In the second, a Bureau of Disability Adjudication  report, Dr. John Cassani, an examining physician, concluded that plaintiff could lift or carry ten pounds occasionally with her right arm, and twenty pounds occasionally and ten pounds frequently with her left arm, and that she was limited in reaching, fingering, and handling objects. *Id*. p. 23, *citing* AR 141-148. However, the ALJ only accorded little weight to this report because he found it "inconsistent with the treating physician's assessment and the claimant's daily activities." *Id*.

Plaintiff bases much of her argument on the holding in *Vertigan v. Halter*. There the Ninth Circuit reiterated the Circuit's previous holding that "one does not need to be utterly incapacitated in order to be disabled." *Veritgan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001), *citing Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). The court stated that the ALJ must consider the claimant's daily activities and the adjudicator's personal observations of the claimant, in evaluating the credibility of the claimant's testimony. *Id*. at 1049. "With respect to daily activities...if a claimant  'is able to spend a *substantial part* of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Id*., *quoting Morgan v. Commissioner of the Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (emphasis in original).

In *Vertigan*, the plaintiff was able to go grocery shopping with assistance, walk approximately an hour in the malls, get together with friends, play cards, swim, watch television, and read. The court found that these activities did not consume a substantial part of the plaintiff's day and that walking in the malls and swimming were not necessarily transferable to the work

setting "with regard to the impact of pain." *Id.* The court agrees that the standard set out in *Vertigan* is controlling law and that it has been repeated in numerous Ninth Circuit cases. However, the ALJ did not base his decision to reject plaintiff's testimony solely on plaintiff's daily activities. He also noted the findings of plaintiff's physicians, which conflicted with plaintiff's subjective complaints of pain (AR 22-23). Additionally, the plaintiff in *Vertigan* appears to have been suffering from more severe physical impairments than Ms. Fullmer (numerous spinal surgeries and extended periods of physical therapy, no ability to do any heavy lifting, bending, stooping, or prolonged sitting or standing). The ALJ there focused on Vertigan's daily activities and gave much weight to one statement of Vertigan's treating physician, even though that statement was conflicted by all of the same physician's other findings. *Vertigan*, 260 F.3d at 1049-50. Such is not the case here. The ALJ in plaintiff's case focused on her daily activities, but also on medical opinions that corroborated each other.

Questions of credibility are for the ALJ to decide, and "where...the ALJ has made specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings are supported by substantial evidence in the record, [the court's] role is not to second guess that decision." *Fair*, 885 F.2d at 604. Further, "when evidence reasonably supports either confirming or reversing the ALJ's decision, [the court] may not substitute [its] judgment for that of the ALJ." *Batson v. Commissioner of the Social Security Administration*, 359 F.3d 1190, 1196 (9th Cir. 2004). The ALJ made specific findings justifying his decision to disbelieve plaintiff's allegations of the intensity, persistence and limiting effects of her pain, and his findings are supported by substantial evidence. The ALJ justified his decision to discredit plaintiff with his belief that plaintiff's daily activities were not as limited as one would expect and with four physician's reports.

22

As for the daily activities, the court disagrees with plaintiff's argument that the ALJ exaggerated them. In her motion, plaintiff claims that she does not clean up after her dog, that she has problems dressing above the waist, and that her daughter performs most of the housework (#14, p. 6). However, at the hearing, plaintiff stated that she sometimes goes into the yard to clean up after her dog and that she is able to dress herself (AR 439, 451-52). Additionally, the record shows that plaintiff's daughter has only sporadically lived with her in the past three years. At the hearing, plaintiff stated that she hand washes her own dishes twice a week, that she sweeps or vacuums once a month, that she does laundry once a week, and that she changes the sheets once a month (AR 436-37). Plaintiff can also grocery shop and pay bills. Additionally, plaintiff spends time playing games with her neighbor, and although she cannot lift her, she periodically takes care of her two-year-old granddaughter (AR 440-41). She also sometimes walks for exercise and reports that she went to the park twice a week during the previous summer and would walk completely around the dog park in an effort to "stay limber" (AR 451). Although the court agrees that plaintiff spends most of her time indoors watching television, the ALJ's finding that plaintiff's record of daily activities belies her complaints of pain is supported by substantial evidence.

Additionally, the ALJ justified his finding by referring to three physicians' reports, which discuss the status of plaintiff's physical impairments and the treatment she had received, including surgery, physical therapy, and pain medication. Plaintiff testified that she has strong, continuous pain, and that sitting and walking is painful (AR 449-50). However, Dr. Galdo stated that plaintiff was only impaired in her ability to do heavy lifting, pulling or pushing, and that plaintiff's condition would improve after her 2005 surgery (AR 241). Plaintiff also states that her pain medication helps (AR 450). Although plaintiff states that sitting and walking is painful, she

23

walks for exercise, sometimes as much as twice a week. She had to readjust her position at one point during the hearing, but she was otherwise able to sit for over an hour (The hearing commenced at 2:30 pm and ended at 3:37 pm) (AR 421, 456, 465). Dr. Sheri Skidmore also noted that although plaintiff complained she had a difficult time sitting, "this was not noted during this interview" (AR 190). As stated above, there is a conflict between plaintiff's "testimony of subjective complaints and the objective medical evidence in the record." *Morgan*, 169 F.3d at 600. Therefore, by explaining plaintiff's daily activities and how they affected his credibility determination, "the ALJ provided specific and substantial reasons that undermined [plaintiff's] credibility." *Id.*, *see also Batson*, 359 F.3d at 1196-97.  Taken as a whole, the reasons the ALJ gave for rejecting plaintiff's pain testimony are clear and convincing and are supported by substantial evidence in the record.

### C.   ALJ's consideration of Plaintiff's Back and Left Shoulder Pain as Impairments

Plaintiff claims that the ALJ erred by failing to consider two of plaintiff's physical disabilities, a partial left rotator cuff tear, and low back pain, in his determination that plaintiff's physical impairments were not disabling (#14, p. 15). Defendant counters that substantial evidence supports the ALJ's consideration of plaintiff's physical impairments, that the ALJ has the responsibility for establishing plaintiff's RFC**,** and that the ALJ is not required to discuss all evidence of record in determining the RFC (#15, p. 7). Plaintiff argues that the ALJ did not consider objective MRI findings, and that the ALJ had an obligation to discuss and develop the record regarding plaintiff's "significant objective pathology" (#16, p. 8).

### 1.   Residual Functional Capacity

The regulations define residual functional capacity ("RFC") as the most a plaintiff can still

do despite her physical, mental, non-exertional, and other limitations. 20 C.F.R. § 404.1545; *see also Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998). If, in determining the plaintiff's RFC, the ALJ applied the proper legal standards and his decision is supported by substantial evidence in the record, the court will affirm the ALJ's findings. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). "It is the responsibility of the ALJ, not the claimant's physician to determine the residual functional capacity." *Vertigan*, 260 F.3d at 1049.

### 2.    Development of the Record

The ALJ is required to "make fairly detailed findings in support of administrative decisions to permit courts to review those decisions intelligently." *Vincent v. Heckler*, 739, F.2d 1393, 1394 (9th Cir. 1984). However, the ALJ is not required to "discuss *all* evidence presented to [him]. Rather, [he] must explain why significant probative evidence has been rejected." *Id*. at 1394-95. The ALJ does not have to explain why he ignored evidence that is neither significant nor probative. *Id*. The court found controverted medical evidence and lay testimony to be neither significant nor probative. *Id*. By contrast, uncontroverted medical evidence is significant, and an ALJ must explain why he rejected such evidence. *Day v. Weinberger*, 522 F.2d 1154, 1156 9th Cir. 1975). However, an ALJ's findings "should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based...so that a reviewing court may...determine if the [ALJ's] decision is supported by substantial evidence. It is incumbent upon the examiner to make specific findings the court may not speculate as to the findings." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981), *quoting Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3rd Cir. 1979).

### 3.    Analysis

The ALJ determined that plaintiff had two severe physical impairments, a status post right

25

shoulder rotator cuff tear and repair and osteoarthritis of the hips (AR 19). The ALJ also acknowledged plaintiff's low back pain by accepting a February 2005 diagnosis by plaintiff's treating physician, but the ALJ did not find plaintiff's low back pain to constitute a severe impairment (AR 19, 22). Based on her physical impairments, the ALJ found that plaintiff had the residual functional capacity to "lift, push, and pull 20 pounds occasionally and 10 pounds frequently; the ability to walk/stand frequently; the ability to sit, stoop, and bend occasionally; the moderately limited ability to reach overhead; the slightly limited ability to maintain attention and concentration; the slightly limited ability for understanding and memory; and the slightly limited ability to do simple, routine, repetitive tasks" (AR 21).

In making his finding of plaintiff's RFC, the ALJ stated that he considered all of plaintiff's symptoms and the extent to which they are consistent with the objective medical evidence and other evidence. *Id*. The ALJ followed a two-step process, first determining whether "there is an underlying medically determinable physical or mental impairment ...that could reasonably be expected to produce claimant's pain or other symptoms...[and] [s]econd,.. .evaluat[ing] the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities." *Id*. As stated above, the ALJ relied on a report from Dr. Bella Galdo, plaintiff's treating physician, listing plaintiff's physical impairments as a right shoulder rotator cuff tear, osteoarthritis in the hips, and chronic lower back pain (AR 22). The ALJ does not appear to explicitly discuss plaintiff's left shoulder impairment (*see* AR 14-25). However, the ALJ asked plaintiff about the limitations her left shoulder impairment cause her at the hearing. Plaintiff stated that she can reach her arms in front of her and to her sides, but that she has difficulty reaching overhead with both of her arms because it causes pain in both of her shoulders (AR 446-447). Plaintiff also

stated that she can pick up a pen and write, she can sense hot and cold, she can turn her head from left to right and look down her shoulders, and she can dress and bathe herself (AR 447-48, 451-52).

The ALJ determined that plaintiff could not perform the "full range of light work" (AR 24). Rather, he found that her "ability to perform all or substantially all of the requirements of [light] work has been impeded by additional limitations. *Id*. Specific to plaintiff's left shoulder impairment, the ALJ found that plaintiff had the moderately limited ability to reach overhead (AR 21). The ALJ consulted the VE at the hearing to determine the extent to which plaintiff's limitations "eroded the unskilled light occupational base" (AR 24). Plaintiff is receiving treatment for her shoulder impairment and her condition has improved. A physical therapy report from February 8, 2006 noted that plaintiff's left shoulder had "markedly improved" and that she had a full, pain free, range of motion (AR 219). Plaintiff herself stated that her medications help her pain (AR 450). Plaintiff receives a cortisone shot in each shoulder once a month. She noted that the shot significantly reduces the pain in her right shoulder (AR 457). The court is to focus on the "validity of the ALJ's underlying decision, and not necessarily on whether the ALJ would come out differently if the case were remanded." *Carmickle*, 533 F.3d at 1163. The ALJ is not required to discuss every piece of evidence in the record, and his findings show that he considered all of plaintiff's physical impairments in making his RFC determination. Although the ALJ did not give a detailed discussion of plaintiff's back or left shoulder impairments, there is substantial evidence supporting the ALJ's finding that plaintiff has the RFC to perform a limited range of light work.

### D.    The Organization of the ALJ's Opinion and the Thoroughness of the Record

Finally, plaintiff asserts that "the ALJ's opinion was generally confusing and the record

27

1
2
created was not thorough" (#14, p. 4). Defendant contends that the "ALJ fully developed the
3
administrative record and issued a clear and comprehensible decision" (#15, p. 3). Defendant also
4
argues that plaintiff did not brief this issue in her points and authorities, and thus abandoned it.
5
*Id*.

6
7
        Although plaintiff criticizes the ALJ's decision throughout her motion and reply briefs,
8
she does not include a separate section specifically addressing the legal errors she finds the ALJ
9
to have committed.  However, plaintiff faults the ALJ for not extensively commenting on Dr.
10
Armerding's 2004 evaluation (#14, p. 7), for misinterpreting plaintiff's daily activities, *Id*. p. 13,
11
for overlooking plaintiff's fear of leaving her house and her desire to die, *Id*., for failing to fully
12
develop the record  by not mentioning MRIs of plaintiff's left shoulder and lower back, *Id*. p. 15-
13
16, and for not completing his discussion on plaintiff's credibility, *Id*. p. 17.  Plaintiff also states
14
that "the ALJ's decision has inconsistencies throughout, along with some fundamental
15
16
organization problems, such that it is difficult at times to figure out what the position of the ALJ
17
was on certain issues." *Id*. p. 16.

18
        "The ALJ in a social security case has an independent duty to fully and fairly develop the
19
record and to assure that the claimant's interests are considered. This duty extends to the
20
21
represented as well as to the unrepresented claimant." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150
22
(9th Cir. 2001) (internal citations omitted). The ALJ's "duty to develop the record further is
23
triggered only when there is ambiguous evidence or when the record is inadequate to allow for
24
proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001),
25
*citing Tonapetyan*, 242 F.3d at 1150. In *Tonapetyan*, the Ninth Circuit found that an ALJ can
26
discharge the duty to develop the record in several ways, including: "subpoenaing the claimant's
27
28
physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping

28

the record open after the hearing to allow supplementation of the record." *Id*.

The record in this case is extensive. The ALJ had the benefit of plaintiff's medical records from several doctors spanning a three-year period (2004-2007). The ALJ left the record open for twenty days to allow Mojave Mental Health to submit plaintiff's records (AR 444). Additional records were also submitted on November 23, 2007, including progress notes from NNAMHS and a physician's statement from Dr. Stephen Dow (AR 9; additional records are also mentioned on this notice, however, they are all duplicates of what was included in the record the ALJ reviewed). These records were submitted after the ALJ issued his decision, but the Appeals Council reviewed them to make its decision not to review plaintiff's case. *Id*. NNAMHS had previously submitted plaintiff's medical progress notes from Dr. Bahten (AR 157-188). The later submission of records also includes Dr. Bahten's progress notes, as well as progress notes for plaintiff's counseling appointments with a psychologist's assistant, plaintiff's visits with service coordination, and plaintiff's participation in rehabilitation treatment (also referred to as "depression classes," *see* #14, p. 9, AR 158). Plaintiff did not mention these additional records at her hearing (AR 444). Plaintiff has the burden of proving that she is disabled. 20 C.F.R. § 404.1512(a). The ALJ fulfilled his duty to develop the record. He reviewed many medical records and discussed them extensively in his decision. He also left the record open to allow plaintiff to submit additional medical evidence.

The court also found the ALJ's decision to be adequately well-organized, as the court was able to understand the ALJ's analysis and reasoning. As noted in the preceding sections,  the ALJ's decision that plaintiff was not disabled is supported by substantial evidence and the ALJ applied the correct legal standard.

1
2
## V.  CONCLUSION

3
4   Based on the foregoing, the court concludes that the ALJ's decision was supported by
substantial evidence and therefore recommends that plaintiff's motion for remand be **DENIED**

5
and defendant's motion to affirm be **GRANTED**.

6
7   The parties are advised:

8   1.   Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice,

9   the parties may file specific written objections to this report and recommendation within ten days

10   of receipt.  These objections should be entitled "Objections to Magistrate Judge's Report and

11   Recommendation" and should be accompanied by points and authorities for consideration by the

12   District Court.

13
14   2.   This report and recommendation is not an appealable order and any notice of appeal

15   pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's

16   judgment.

17
## IV.  RECOMMENDATION

18
19   **IT IS THEREFORE RECOMMENDED** that plaintiff's motion for remand (#14) be

20   **DENIED** and defendant's cross-motion to affirm (#15) be **GRANTED**.

21   **DATED:** January 15, 2009.

22
23   _____

24   **UNITED STATES MAGISTRATE JUDGE**

25
26
27
28